IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| OHIO REFINING COMPANY, LLC, | ) |
| CHEVRON U.S.A. INC., | ) |
| PILKINGTON NORTH AMERICA, INC., | ) |
| CHEMTRADE LOGISTICS, INC., | ) |
| and | ) |
| ENERGY TRANSFER (R&M), LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Secretary of the Department of the Interior ("DOI") and on behalf of DOI, hereby files this Complaint and alleges as follows:

**NATURE OF ACTION**

1. This is a civil action brought by the United States ("Plaintiff") against Ohio Refining Company, LLC ("ORC"), Chevron U.S.A., Inc. ("Chevron"), Pilkington North America, Inc. ("PNA"), Energy Transfer (R&M), LLC ("Energy Transfer"), and Chemtrade Logistics, Inc. ("Chemtrade") (collectively, the "Defendants"), under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, Section 311(f) of the Federal Water Pollution Control Act (also known as the Clean Water Act or "CWA"), 33 U.S.C. § 1321(f), and Section 1002 of the Oil Pollution Act

("OPA"), 33 U.S.C. § 2702, for recovery of damages for injury to, loss of, or destruction of natural resources resulting from releases of hazardous substances and/or discharges of oil into navigable waters or adjoining shorelines.

2. Each of the Defendants is responsible for historic releases of hazardous substances, such as polycyclic aromatic hydrocarbons (PAHs), metals (including arsenic, barium, cadmium, chromium, mercury, lead, selenium, and zinc), polychlorinated biphenyls (PCBs), and pesticides, and/or historic discharges of oil into the environment at the Duck & Otter Creeks NRDA Site ("Site") located in Lucas and Wood Counties, Ohio. Releases of hazardous substances and discharges of oil have resulted in injury to various natural resources -- including fish and benthic invertebrates -- for which DOI serves as Federal Trustee. Plaintiff also seeks to recover the un-reimbursed costs of assessing such damages.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to CERCLA Section 113(b) and (e), 42 U.S.C. § 9613(b) and (e); CWA Section 311(n), 33 U.S.C. § 1321(n); OPA Section 1017(b), 33 U.S.C. § 2717(b); and 28 U.S.C. §§ 1331 and 1345.

4. Venue is proper in the Northern District of Ohio pursuant to CERCLA Section 113(b), 42 U.S.C. § 9613(b); OPA Section 1017(b), 33 U.S.C. § 2717(b); and 28 U.S.C. § 1391(b), because the claims arose, and the threatened and actual releases of hazardous substances and oil occurred in this district.

## BACKGROUND ON THE SITE AND THE STATUTE

5. The Duck & Otter Creeks NRDA Site consists of Duck and Otter Creeks, two adjacent creeks in the larger urbanized Maumee River watershed in Northwestern Ohio, as well

as the riparian and associated aquatic habitats within the sub-watersheds of Duck and Otter Creeks, the delta areas of the two creeks within Maumee Bay, and upland areas within the sub-watersheds. The Creeks lie just east of the Maumee River, and both flow into Maumee Bay on Lake Erie. Duck Creek flows in a north to northeasterly direction for approximately four miles before entering the Maumee River near its mouth on Lake Erie. Otter Creek, approximately seven miles long, lies to the east of and roughly parallels Duck Creek, entering Lake Erie to the east of the mouth of the Maumee River.

6. Both Duck Creek and Otter Creek have a long history of channelization, and the presence of industrialization along their shores. Both Creeks are receiving waters for stormwater and industrial effluents from large and small industrial interests. Both Creeks also have riparian buffer vegetation of varying widths along their channels, and adjacent wetlands within their floodplains.

7. Facilities currently and/or formerly owned and/or operated by the Defendants discharged large amounts of PAH compounds (via petroleum product releases) and/or metals to the Creeks in connection with past industrial activity. PAH and metals contamination was identified in sediments throughout the Site and in sufficient concentrations to cause injury to many types of natural resources, including sediment, vegetation, invertebrates, and fish.

8. The Secretary of the Interior has been designated as a natural resource trustee for federal trust resources at and near the Site pursuant to 42 U.S.C. § 9607(f)(2)(A), 33 U.S.C. § 2706(b), 40 C.F.R. § 300.600, and Exec. Ord. No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987). DOI (the "Federal Trustee") acts on behalf of the public as a trustee for natural resources, including threatened or endangered species, migratory birds, other fish and aquatic life, and their

supporting ecosystems, belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States. *See*, *e.g.*, 40 C.F.R. § 300.600.

9. CERCLA Section 107(f), 42 U.S.C. § 9607(f), authorizes the Federal Trustee to recover natural resource damages ("NRD"), *i.e.* damages for any injury to, destruction of, or loss of natural resources resulting from the release of hazardous substances, including the reasonable costs of assessing such injury. CERCLA Section 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), imposes liability for such damages on certain classes of potentially responsible parties ("PRPs"), including current owners and operators of a facility from which there has been a release of a hazardous substance, parties that owned or operated a facility at the time of disposal of a hazardous substance, and parties that arranged for disposal or treatment of a hazardous substance at a facility owned by another party or entity.

10. CWA Section 311(f), 33 U.S.C. § 1321(f), authorizes a Federal Trustee to recover from the owner or operator of an onshore facility any costs or expenses incurred by the Federal Government in the restoration or replacement of natural resources damaged or destroyed as a result of a discharge of oil or hazardous substances into the navigable waters of the United States or adjoining shorelines.

11. OPA Section 1002, 33 U.S.C. § 2702, authorizes a Federal Trustee to recover damages for injury to, destruction of, loss of, or loss of use of, natural resources, resulting from the discharge or substantial threat of discharge of oil into or upon the navigable waters or adjoining shorelines, including the reasonable costs of assessing the damage. OPA Section 1002(a), 33 U.S.C. § 2702(a), imposes liability for such damages on the "responsible party," defined in OPA Section 1001(32)(B), 33 U.S.C. § 2701(32)(B), as the owner or operator of an onshore facility.

12. Under CERCLA and OPA the term "natural resources" includes "land, fish, wildlife, biota, air, water . . . and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States [or] any State or local government[.]" 42 U.S.C. § 9601(16) and 33 U.S.C. § 2701(20). Under the CWA natural resources includes, but is "not limited to, fish, shellfish, wildlife, shorelines, and beaches." 33 U.S.C. § 1321(b)(2).

13. Natural resources have been injured as a result of releases of hazardous substances – especially PAHs and metals – and discharges of oil into the environment at the Site.

14. NRD includes the costs of actions to restore, replace, or acquire the equivalent of the injured natural resources and the reasonable costs of assessing the injury and the associated damages. NRD may also include compensation for interim losses to the public attributable to natural resource injuries from the onset of the injury through their repair or recovery to an uninjured state, adjusted for any mitigation of those injuries by response actions or early restoration actions, and any increase in injuries that may have occurred as a result of response actions.

15. As required by CERCLA Section 301(c), 42 U.S.C. § 9651(c), DOI has promulgated regulations respecting the assessment of NRD and associated restoration activities. Those regulations are codified at 43 C.F.R. Part 11.

16. As expressly provided by CERCLA Section 107(c)(2), 42 U.S.C. § 9607(c)(2), any determination or assessment of damages made by a Federal Trustee in accordance with DOI's NRD assessment regulations shall have the force and effect of a rebuttable presumption on behalf of the trustee in any judicial proceeding to recover such damages under CERCLA.

5

17. DOI has performed a variety of NRD assessment and restoration activities concerning the Site in accordance with DOI's NRD assessment regulations. The assessment activities have included preparation of a Preassessment Screen and Determination, Notices of Intent to Perform an Assessment, and a Final Assessment Plan. The Federal Trustee has also prepared a Draft Restoration Plan and Environmental Assessment which assesses injuries to natural resources from contaminants of concern at the Duck & Otter Creeks NRDA Site – including PAHs, PCBs, arsenic, barium, cadmium, chromium, mercury, lead, selenium, zinc, and DDT – and determined the resulting damages. The injured natural resources include surface water, sediment, and the organisms that utilize the riverine habitats (*e.g.*, fish, birds, reptiles, amphibians, mammals).

18. The amounts recoverable in an action for NRD under CERCLA Section 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), include statutory prejudgment interest on the damages.

## ALLEGATIONS RELATING TO DEFENDANTS

Allegations Concerning Ohio Refining Company, LLC:

19. The "ORC Refinery" at 4001 Cedar Point Road, Oregon, Ohio, is located over an area of 585 acres within the boundaries of the Duck & Otter Creeks NRDA Site.

20. The ORC Refinery was built in 1919 by Standard Oil of Ohio, a predecessor company of BP. The original ORC Refinery went through a series of rebuilds and expansions over the subsequent decades. In 2008, BP and Husky Energy entered into a joint venture pursuant to which Husky Energy acquired a 50% interest in the ORC Refinery. BP-Husky Refining LLC became the owner and operator of the ORC Refinery.

21. Cenovus Energy Inc. combined with Husky Energy in 2021, acquiring Husky Energy's 50% interest in BP-Husky Refining and the ORC Refinery. In 2023, Cenovus Energy

6

acquired BP's 50% ownership share in the joint venture. BP-Husky Refining LLC was renamed Ohio Refining Company, LLC.

22. ORC is the current owner and operator of the ORC Refinery and is the successor in liability to the prior owners and operators of the ORC Refinery.

23. The ORC Refinery discharged wastewater and/or stormwater containing PAHs to Otter Creek while the ORC Refinery was owned and operated by predecessors in liability to ORC.

24. ORC is a successor in liability to an entity that owned and operated a facility at the time of disposal of hazardous substances at that facility, and there were releases of hazardous substances from that facility to the environment at the Site.

25. The ORC Refinery discharged wastewater and/or stormwater containing oil to Otter Creek without a permit while the ORC Refinery was owned and operated by predecessors in liability to ORC.

26. ORC is a successor in liability to an entity that owned and operated a facility at the time of releases of oil, without a permit, to the Site.

Allegations Concerning Chevron U.S.A. Inc.:

27. The "Chevron Refinery" on Front Street in Toledo, Ohio is located over an area of 180 acres within the boundaries of the Duck & Otter Creeks NRDA Site.

28. In 1889, Paragon Refining Company opened the Chevron Refinery. Gulf Oil Corporation acquired the Chevron Refinery in 1930 and operated it until 1981. Chevron Corporation merged with Gulf Oil in 1984, acquiring the closed Chevron Refinery. Chevron U.S.A. is the successor for Gulf Oil's liabilities associated with the Chevron Refinery.

7

29. The Chevron Refinery discharged stormwater containing PAHs to Duck Creek and Otter Creek while the Chevron Refinery was owned and operated by predecessors in liability to Chevron.

30. Chevron is a successor in liability to an entity that owned and operated a facility at the time of disposal of hazardous substances at that facility, and there were releases of hazardous substances from that facility to the environment at the Site.

31. The Chevron Refinery discharged stormwater containing oil to Duck Creek and Otter Creek without a permit while the Chevron Refinery was owned and operated by predecessors in liability to Chevron.

32. Chevron is a successor in liability to an entity that owned and operated a facility at the time of releases of oil, without a permit, to the Site.

Allegations Energy Transfer (R&M), LLC:

33. The "Sunoco Refinery" at 1819 Woodville Road in Toledo, Ohio is located over an area of 282 acres within the boundaries of the Duck & Otter Creeks NRDA Site.

34. Energy Transfer (R&M), LLC, was formerly known as Sunoco (R&M), LLC, which was formerly known as Sunoco, Inc. (R&M). Energy Transfer is a subsidiary of ETC Sunoco Holdings LLC, which was formerly known as Sunoco, Inc.

35. Sunoco owned the Sunoco Refinery from its construction, in approximately 1894, until 2011 and operated the Sunoco Refinery from approximately 1912 until 2011. In 2011, Sunoco sold the Sunoco Refinery to Toledo Refining Company, LLC.

36. The Sunoco Refinery discharged wastewater and/or stormwater containing PAHs to Otter Creek while the ORC Refinery was owned and operated by Sunoco.

37. Energy Transfer is a successor in liability to an entity that owned and operated a facility at the time of disposal of hazardous substances at that facility, and there were releases of hazardous substances from that facility to the environment at the Site.

38. The Sunoco Refinery discharged wastewater and/or stormwater containing oil to Otter Creek without a permit while the Sunoco Refinery was owned and operated by predecessors in liability to Energy Transfer.

39. Energy Transfer is a successor in liability to an entity that owned and operated a facility at the time of releases of oil, without a permit, to the Site.

Allegations Concerning Pilkington North America, Inc.:

40. The "Pilkington Plant" at 1769 East Broadway Street, Northwood, Ohio, is located over an area of 79 acres within the boundaries of the Duck & Otter Creeks NRDA Site.

41. Libbey-Owens-Ford Glass Company ("LOF") owned and operated the Pilkington Plant, the location of a glass manufacturing and warehouse facility. LOF ceased glass manufacturing operations at the Pilkington Plant in 1982. In 1986, the Pilkington Group acquired LOF's glass business, including the Pilkington Plant. Pilkington North America, Inc. is the current owner of the Pilkington Plant and operator of the remaining facilities there. PNA is the successor for liabilities associated with the Pilkington Plant.

42. The Pilkington Plant discharged wastewater and/or stormwater containing arsenic to Otter Creek while the Pilkington Plant was owned and operated by PNA and its predecessors in liability.

43. PNA owned and operated a facility at the time of disposal of hazardous substances at that facility and is a successor in liability to an entity that owned and operated a

9

facility at the time of disposal of hazardous substances at that facility, and there were releases of hazardous substances from that facility to the environment at the Site.

Allegations Concerning Chemtrade Logistics, Inc.:

44. The "Chemtrade Plant" is located on the grounds of the ORC Refinery at 1400 Otter Creek Road, Oregon, Ohio, within the boundaries of the Duck & Otter Creeks NRDA Site.

45. The Chemtrade Plant retreats spent sulfuric acid. In the late 1960s, Coulton Chemical Company built the Chemtrade Plant on leased land at the ORC Refinery. Marsulex Inc. acquired Coulton Chemical, including the Chemtrade Plant, in 1996. Chemtrade acquired Marsulex in 2011 and became the current owner and operator of the Chemtrade Plant.

46. Chemtrade is the current owner and operator of the Chemtrade Plant and is the successor in liability to the prior owners and operators of the Chemtrade Plant.

47. The Chemtrade Plant discharged wastewater and/or stormwater containing lead to Otter Creek while the Chemtrade Plant was owned and operated by Chemtrade and predecessors in liability to Chemtrade.

48. Chemtrade owned and operated a facility at the time of disposal of hazardous substances at that facility and is a successor in liability to an entity that owned and operated a facility at the time of disposal of hazardous substances at that facility, and there were releases of hazardous substances from that facility to the environment at the Site.

General Allegations:

49. Each Defendant is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21); CWA Section 311(a)(7), 33 U.S.C. § 1321(a)(7); and OPA Section 1001(9), 33 U.S.C. § 2701(9).

50. Each industrial facility located or formerly located at the Site is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

51. Each sewer system (including each sewer pipe) located or formerly located at the Site is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

52. The Duck & Otter Creeks NRDA Site is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

53. Each industrial facility located or formerly located at the Site is an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10).

54. The ORC Refinery is a "facility" within the meaning of OPA Sections 1001(9) and 1002(a), 33 U.S.C. §§ 2701(9) and 2702(a), and an "onshore facility" within the meaning of OPA Section 1001(24), 33 U.S.C. § 2701(24).

55. The Chevron Refinery is a "facility" within the meaning of OPA Sections 1001(9) and 1002(a), 33 U.S.C. §§ 2701(9) and 2702(a), and an "onshore facility" within the meaning of OPA Section 1001(24), 33 U.S.C. § 2701(24).

56. The Sunoco Refinery is a "facility" within the meaning of OPA Sections 1001(9) and 1002(a), 33 U.S.C. §§ 2701(9) and 2702(a), and an "onshore facility" within the meaning of OPA Section 1001(24), 33 U.S.C. § 2701(24).

57. PAHs and metals are "hazardous substances" within the meaning of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a), and CWA Section 311(a)(14), 33 U.S.C. § 1321(a)(14).

58. "Natural resources" within the meaning of CERCLA Section 101(16), 42 U.S.C. § 9601(16), and CWA Section 311(f), 33 U.S.C. § 1321(f), have been and/or are being injured, lost, or destroyed as a result of the release of hazardous substances at the Site.

59. "Natural resources" within the meaning of OPA Sections 1001(20) and 1002(b), 33 U.S.C. §§ 2701(20) and 2702(b), have been and/or are being injured, lost, or destroyed as a result of the discharge of oil at the Site.

60. Plaintiff has incurred costs in assessing damages to natural resources resulting from the release of hazardous substances and discharge of oil at the Site.

### FIRST CLAIM FOR RELIEF
### (CERCLA / CWA – All Defendants)

61. Paragraphs 1 through 60 are realleged and incorporated herein by reference.

62. In light of the foregoing, each Defendant is liable to Plaintiff in this action under CERCLA Section 107(a)(1) and (a)(2), 42 U.S.C. § 9607(a)(1)-(2) and CWA Section 311(f), 33 U.S.C. § 1321(f).

63. Releases of hazardous substances, including PAHs and metals, into the environment at the Site have resulted in injury to, destruction of, or loss of natural resources under Federal trusteeship.

64. DOI has incurred reasonable costs of assessing the injury, destruction, or loss of natural resources resulting from releases of hazardous substances to the Site and into the environment at the Site.

65. Each of the Defendants is jointly and severally liable to the United States for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such damages and the injury, destruction, or loss resulting from releases of

hazardous substances to the Site and into the environment at the Site, pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

## SECOND CLAIM FOR RELIEF
### (Oil Pollution Act – Defendants Ohio Refining Company, LLC, Chevron U.S.A. Inc., and Energy Transfer (R&M), LLC)

66. Paragraphs 1 through 60 are realleged and incorporated herein by reference.

67. The ORC Refinery, the Chevron Refinery, and the Sunoco Refinery are each a "facility" as defined in OPA Section 1001(9), 33 U.S.C. § 2701(9).

68. Defendants ORC, Chevron, and Energy Transfer are each a "responsible party" as defined in OPA Section 1001(32)(C), 33 U.S.C. § 2701(32)(C).

69. Wastewater and/or stormwater released from the ORC Refinery, the Chevron Refinery, and the Sunoco Refinery contained "oil" as the term is defined in OPA Section 1001(23), 33 U.S.C. § 2701(23).

70. Each discharge of oily wastewater and oil-contaminated stormwater from the ORC Refinery to Otter Creek was a "discharge" of oil as the term is defined in OPA Section 1001(7), 33 U.S.C. § 2701(7).

71. Each discharge of oil-contaminated stormwater from the Chevron Refinery to Duck Creek and Otter Creek was a "discharge" of oil as the term is defined in OPA Section 1001(7), 33 U.S.C. § 2701(7).

72. Each discharge of oily wastewater and oil-contaminated stormwater from the Suncoo Refinery to Otter Creek was a "discharge" of oil as the term is defined in OPA Section 1001(7), 33 U.S.C. § 2701(7).

73. Both Duck Creek and Otter Creek constitute a "navigable water of the United States," as defined in OPA Section 1001(21), 33 U.S.C. § 2701(21).

74. "Natural resources," as that term is defined in OPA Section 1001(20), 33 U.S.C. § 2701(20), under Federal trusteeship have been injured, destroyed, or lost as the result of the discharge or substantial threat of discharge of oil into navigable waters or adjoining shorelines, within the meaning of 33 U.S.C. § 2702(b)(2).

75. Plaintiff has incurred reasonable costs of assessing the injury, destruction, or loss of natural resources resulting from the discharge or substantial threat of discharge of oil into the environment at the Site.

76. Pursuant to OPA Section 1002, 33 U.S.C. § 2702, Defendants ORC, Chevron, and are each a responsible party for a facility from which oil was discharged into navigable waters or adjoining shorelines and is strictly liable for damages caused thereby, including but not limited to damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter a judgment in favor of Plaintiff and against the above-named Defendants, jointly and severally, for damages and all costs or expenses incurred by Plaintiff in the assessment or restoration of natural resources injured, lost or destroyed as a result of the release or threatened release of hazardous substances at the Duck and Otter Creeks NRDA Site;

2. Enter a declaratory judgment in favor of Plaintiff and against the above-named Defendants, pursuant to 28 U.S.C. § 2201, that Defendants are jointly and severally liable for any future costs or expenses incurred by the United States in the restoration or replacement of natural resources damaged or destroyed as a result of the release or threatened release of hazardous

substances at the Duck and Otter Creeks NRDA Site, including natural resource damage assessment costs and costs of implementing natural resource restoration activities;

      3.      Enter a judgment in favor of Plaintiff and against Defendants ORC, Chevron, and Energy Transfer for damages and all costs or expenses incurred by Plaintiff in the assessment or restoration of natural resources injured, lost or destroyed as a result of the discharge or substantial threat of discharge of oil at the Duck and Otter Creeks NRDA Site;

      4.      Award Plaintiff its costs of this action; and

      5.      Grant such other and further relief as the Court deems just and proper.

**For the United States of America**

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

_____
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7511
(202) 514-4432
Jeffrey.Spector@usdoj.gov

REBECCA C. LUTZKO
United States Attorney
Northern District of Ohio


  /s Guillermo L. Rojas
GUILLERMO L. ROJAS
Assistant United States Attorney
Northern District of Ohio
Four Seagate, Third Floor
Toledo, OH 43604
(419) 241-0716
Guillermo.Rojas@usdoj.gov


OF COUNSEL:

Kelly Brooks Bakayza, Esq.
Senior Attorney
U.S. Department of the Interior
Office of the Solicitor
5600 American Blvd W., Suite 650
Bloomington, MN 55437